IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIM. NO. 1:02-CR-146-02** |
| **v.** : | |
| : | |
| **FRANKLIN C. BROWN** : | **(Judge Sylvia H. Rambo)** |

# M E M O R A N D U M

Before the court is Defendant Franklin C. Brown's Motion to Disqualify United States District Judge Sylvia H. Rambo Pursuant to 28 U.S.C. §§ 455 and 144. (Doc. 986.) Although the court finds the motion to be untimely, the court will nevertheless grant the motion.

## I.   **Background**[1]

Defendant Franklin C. Brown was charged in connection with accounting irregularities at Right Aid Corporation, where he was general counsel. Following a jury trial in 2003, Brown was convicted and was originally sentenced to 120 months in prison followed by two years of supervised release.[2] On March 3,

---

[1] Because this case has spanned over a decade, the court will only address the procedural background as needed.

[2] Specifically, Defendant was convicted on: (1) Count 1 for conspiracy to commit accounting fraud in violation of 18 U.S.C. § 371; (2) Count 10 for filing false statements to the United States Securities and Exchange Commission ("SEC") in violation of 18 U.S.C. § 1001, namely false statements contained in Rite Aid's fiscal year ("FY") 1999 Pre-Tax Income Form 10-K filed on June 1, 1999; (3) Count 12 for filing false statement to the SEC in violation of § 1001, namely willful concealment of Defendant's Amended and Restated Deferred Compensation Agreement in Rite Aid's 1997 Proxy Statement filed on June 2, 1997; (4) Count 13 for filing false statements to the SEC in violation of § 1001, namely willful concealment of Defendant's Amended and Restated Deferred Compensation Agreement and Rite Aid's $2.6 million payment to CCA Associates, Inc. in Rite Aid's

(continued...)

2005, Brown surrendered to the custody of the Federal Bureau of Prisons ("BOP") and began serving his sentence.

Although Brown appealed various aspects of his conviction, his conviction was ultimately affirmed by the Third Circuit Court of Appeals. *See United States v. Brown*, 595 F.3d 498 (3d Cir. 2010). However, the case was remanded for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which was decided after Brown's original sentencing. *Id.* at 527.

On August 13, 2010, the court granted Brown's motion for temporary release pending resentencing in light of his various medical conditions. (Doc. 928.) On September 29, 2010, the court held a resentencing hearing. After considering the evidence presented, the court concluded that the BOP could adequately care for Brown's current medical needs, but that its ability to do so was constrained by what was then currently known about those needs. The court granted a variance of eighteen months from the advisory guideline range of 108-135 months and

---

²(...continued)
1998 Proxy Statement filed on May 15, 1998; (5) Count 14 for filing false statements to the SEC in violation of § 1001, namely willful concealment of Rite Aid's $2.6 million payment to CCA Associates, Inc. and Martin Grass's payment of $2.9 million to Rite Aid in the Current Report on Form 8-K filed February 9, 1999; (6) Count 15 for filing false statements to the SEC in violation of § 1001, namely willful concealment of Defendant's Amended and Restated Deferred Compensation Agreement, Rite Aid's $2.6 million payment to CCA Associates, Inc., Martin Grass's payment of $2.9 million to Rite Aid, and Martin Grass's letter to Defendant dated May 6, 1998 regarding Defendant's severance and retirement benefits in Rite Aid's 1999 Proxy Statement filed June 14, 1999; (7) Count 33 for conspiracy to obstruct justice in violation of 18 U.S.C. § 371; (8) Count 34 for obstruction of grand jury proceedings in violation of 18 U.S.C. § 1503; (9) Count 35 for obstruction of an SEC investigation in violation of 18 U.S.C. § 1505; and (10) Count 36 for tampering with a witness in violation of 18 U.S.C. § 1512(b)(1)(2).

resentenced Brown to concurrent sentences totaling 90 months.[3] (Doc. 958.) Brown appealed his resentencing on September 30, 2010. (Doc. 956.) The Third Circuit Court of Appeals once again remanded the case for resentencing, finding that this court did not consider all relevant factors set forth under 18 U.S.C. § 3553(a). (Doc. 972-2.) On August 31, 2011, the court issued an amended judgment and sentenced Brown to concurrent sentences totaling sixty months. (Doc. 980.)

Subsequently, on November 29, 2011, Defendant filed a motion to vacate under 28 U.S.C. § 2255.[4] (Doc. 983.) While that motion was pending, Defendant also filed, on December 22, 2011, a motion to disqualify the undersigned judge pursuant to 28 U.S.C. §§ 455 and 144. (Doc. 986.) The Government filed a response on February 29, 2012 (Doc. 993) to which Defendant filed a reply on March 21, 2012 (Doc. 996). The motion is thus ripe for disposition.

## II. **Standard**

Under 28 U.S.C. § 455(a), a judge should recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." *George N. Pegula Agency, Inc. v. Monumental Life Ins. Co.*, 1999 U.S. Dist. LEXIS 23196, *17 (M.D. Pa. March 9, 1999). In deciding a motion for recusal, the court must apply an

---

[3] Because of the time Brown had already served, as well as application of good time credits already accrued, Brown would have been eligible for release in approximately one year from the date that he resumed serving his sentence, and would have been statutorily eligible for release to home confinement within 6-7 months after he began serving his sentence. *See* 18 U.S.C. § 3624(c)(2).

[4] In his § 2255 motion, Defendant argues he was denied effective assistance of counsel as a result of: (1) trial counsel's failure to object to this court's jury instruction on aiding and abetting; (2) appellate counsel's failure to appeal this court's aiding and abetting jury instruction; (3) trial counsel's failure to base his request for the literal truth jury instruction on the appropriate language in the February 9, 1999 Form 8-K; (4) trial counsel's failure to investigate the authenticity of the Noonan recordings before trial and object to their use and admissibility at trial; (5) trial counsel's failure to interview or otherwise investigate key fact witnesses and failure to offer expert testimony on complex trial issues; and (6) a denial of due process relating to the Noonan recording.

objective standard. *Id.* (citing *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir. 1987)). "Quite simply and quite universally, recusal [is] required whenever 'impartiality might be reasonably questioned.'" *Liteky v. United States*, 510 U.S. 540, 548 (1994). The test under § 455(a) "is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *United States v. Wecht*, 484 F.3d 194, 213 (3d Cir. 2007). "The underlying goal of § 455(a) [is] to avoid the appearance of partiality even where no partiality exists." *Liteky*, 510 U.S. at 563. In other words, a motion for recusal under § 455 must be granted even where the judge is not "subjectively biased or prejudiced, so long as [she] appears to be so." *Id.* at 553 n.2. In *Pfizer Inc. v. Kelly*, 997 F.2d 764, 782 (3d Cir. 1992), the court explained that Congress enacted § 455 to ensure that the public's perception of the judiciary remained positive by avoiding harm to public confidence that would result from the appearance of bias, especially in high profile cases. *See also Planned Parenthood of S.E. Pa. v. Casey*, 812 F. Supp. 541, 543 (E.D. Pa. 1993). However, while a judge has an affirmative duty to disqualify herself in the face of sufficient allegations concerning bias, the judge has an equally affirmative duty to retain the case should sufficient allegations be lacking. *See Schwartz v. Hosp. of the Univ. of Pa.*, 1992 U.S. Dist. LEXIS 7381, *8 (E.D. Pa. May 4, 1992).

      In contrast, Section 144 disqualification is triggered by an affidavit that alleges "the judge before whom the matter is pending has a personal bias or prejudice either against [the affiant] or in favor of any adverse party." 28 U.S.C. § 144. However, in *Liteky*, the Supreme Court noted the standard for bias or prejudice under § 144 is identical to disqualification for bias and prejudice under

§ 455.  510 U.S. at 548.  Further, in *Mims v. Shapp*, 541 F.2d 415 (3d Cir. 1976), the Third Circuit held that a district judged face with a motion for disqualification under § 144 must accept the allegations of the moving party as true.  Thus, the relevant question is whether the facts alleged by Defendant, if accepted as true, would cause a reasonable person to believe that a judge's partiality might be in question.

### III.      Discussion

Defendant points to several occurrences that he suggests are indicative of this court's prejudice or bias against him.  First, Defendant believes that this court engaged in improper *ex parte* communications with the government.  In support, Defendant points to a June 25, 2003 letter from the court to Assistant U.S. Attorney ("AUSA") Kim Daniel, copied to Reid Weingarten, Defendant's counsel at that time, regarding Defendant's plea agreement.  The letter begins: "As you are aware, I have decided to reject the proposed plea agreement . . . ."  (Doc. 910.)  The following day, on June 26, 2003, the court held an in-chambers conference with counsel from both parties.  At that conference, then-AUSA Martin Carlson, now a magistrate judge in this district, stated "Your honor, I believe Mr. Sorkin, as we discussed yesterday, sits in a different footing certainly than Mr. Brown."  (Tr. of 6/26/2003 conf., Doc. 519 at 6.)  Defendant also points to several other statements from then-U.S. Attorney Thomas Morino that reference a discussion "yesterday."  (*Id.* at 10.)  Lastly, Defendant references a phone call between his counsel and AUSA Daniel on June 28, 2011 during which AUSA Daniel informed Brown's counsel that he knew that this court had listened to the oral argument in Brown's case, which was posted on the Third Circuit's website.  It is Defendant's contention that these statements are

evidence that could lead to a reasonable inference that this court had engaged in *ex parte* communications with the U.S. Attorney's Office.

Defendant also argues that the court's reaction to the proposed plea agreement further supports a perception of bias against Defendant.[5] Defendant further points to the transcript of an in-chambers conference wherein the court indicated its concerns over treating two co-defendants differently, given what the court "heard about the case . . . both from the media and in the courtroom." (Doc. 519 at 9.) Defendant contends that these statements indicate an extra-judicial source of bias that weighs in favor of disqualification.

Lastly, Defendant takes this opportunity to challenge some of the court's prior rulings. For example, Defendant challenges the court's finding at the first resentencing that Brown had not met his burden of showing that the Bureau of Prisons could not meet his medical needs. *See United States v. Brown*, 338 F. Supp. 2d 552, 562 (M.D. Pa. 2004).[6] Defendant also challenges various conclusions in the court's memorandum regarding his objections to the Pre-Sentence Investigative Report as being incorrect and unsupported by evidence. Finally, Defendant argues that the court ignored the broken chain of custody evidence regarding a tape recording and criticizes the court for not sanctioning the government for concealing

---

[5] The Third Circuit upheld this court's rejection of Defendant's plea agreement, finding that the court did not abuse its discretion. *United States v. Brown*, 595 F.3d 498, 522 (3d Cir. 2009). The Third Circuit further found that this court's criticisms of the last-minute plea were understandable. *Id.* at 523.

[6] On appeal, the Third Circuit remanded, not because the court's finding was erroneous or an abuse of discretion, but rather found that the court did not sufficiently explain why FMC-Butner could provide Brown with adequate medical care. *See United States v. Brown*, 429 F. App'x 82, 86 (3d Cir. May 25, 2011).

potentially exculpatory evidence ("Rule 33 rulings").[7] Defendant concludes that these rulings "standing alone" provide a basis for disqualification because "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." (Doc. 986 at 21.)

   The court could deny Defendant's motion on any number of grounds. First, Defendant's motion is untimely. Although timeliness in submitting a motion to recuse is not explicitly required under § 455(a), a number of courts have interpreted § 455(a) to require it implicitly. *See Pegula*, 1999 U.S. Dist. LEXIS 23196, *20 (gathering cases). Those courts have held that once a party seeking recusal knows of the facts on which recusal is based, it must move promptly to disqualify under § 455(a) or loose the right to do so. This judicially imposed timeliness requirement is intended to prevent a party from using § 455(a) as a tactical weapon only if needed. *Id.* at 21-22. In *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998), the court found "The most egregious delay – the closest thing to being *per se* untimeliness – occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse judgment before raising the issue of recusal." *See also Rabushka v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997) (finding a recusal motion under § 455(a) untimely where a party waited until after summary judgment was entered against it).

   The filing of Defendant's motion at this late point in the proceedings would constitute a "most egregious delay." Indeed, the alleged *ex parte* communications occurred in 2003 and June 2011. The court's rejection of the plea

---

[7] The Third Circuit, however, saw "no reason to second-guess the chain of custody issues," 595 F.3d at 512, n. 17, and agreed that the allegedly exculpatory statements in the tape recording were "at best neutral to Brown's guilt or innocence and not exculpatory," *Id.* at 513.

agreement occurred in June 2003.  The court's Rule 33 evidentiary rulings were in February 2008, and the court first ruled on BOP's adequacy of medical care in August 2004 and again on resentencing in September 2010.  Thus, many of the alleged events that form the basis for the present motion occurred nearly a decade ago.  Now, only after being convicted and sentenced does Defendant move to disqualify.  Such a practice falls well short of the due diligence timeliness requirements under § 455.

The court is not persuaded by Defendant's attempt to circumvent the timeliness requirement by arguing that because he was not present during the June 26, 2003 in-chambers conference, he was not aware of the alleged *ex parte* communications.  Although not physically present, Brown was represented by counsel at that meeting.  He was permitted to attend the meeting, but apparently chose not to do so.  Accordingly, his interests were adequately represented at the meeting and he is not excused from his obligation to bring a timely § 455(a) motion on this basis.  Moreover, Defendant seemingly concedes the untimeliness of his request by stating "Although Brown's trial counsel did not object at the time or seek this Court's disqualification, he most certainly should have and the instant Motion filed under 28 U.S.C. § 2255 attempts to bring trial counsel's many failings into focus."[8]  (Doc. 986 at 5.)  In short, Defendant has not demonstrated good cause for his delay in filing the present motion.[9]

---

[8] Defendant alludes that his § 2255 motion also addresses this issue, however Defendant does not argue in the § 2255 motion that his sentence should be vacated based on his counsel's failure to object or seek disqualification at that time.  *Cf* note 4, *supra*.

[9] The Second Circuit Court of Appeals has set forth a similar four-factor test for determining whether a § 455(a) motion is timely.  A court should consider whether: (1) the movant has
(continued...)

Moreover, Defendant's arguments are substantively lacking and fail to show the "deep-seated favoritism or antagonism" that Defendant suggests. Indeed, many of the court's rulings targeted here were upheld on appeal. *See* notes 5, 6 and 7, *supra*. Furthermore, a judge's adverse rulings cannot support a finding of bias and do not constitute grounds for recusal. *See Ar-Rashid v. Grooms*, 1993 U.S. Dist. LEXIS 6102, *7 (E.D. Pa. May 10, 1993) (citing *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980)); *see also Ebeling & Reuss, LTD v. Swarovski Int'l Trading Corp.*, 1992 U.S. Dist. LEXIS 12731, *86 (E.D. Pa. Aug. 25, 1992) ("Normally, the judge's rulings at trial do not constitute grounds for recusal because they can be reversed on appeal"). Thus, the court could deny Defendant's motion on this additional ground.

That being said, without conceding any actual bias on the part of this court, the court will grant Defendant's motion. Notably, the court reiterates its dedication to fairness, objectivity and impartiality throughout the course of this protracted litigation. However, pursuant to the applicable standard, the court is required to accept all of Defendant's allegations as true and ask whether a reasonable person, knowing the alleged circumstances, might question the judge's impartiality. Thus, it is apparent that a movant must merely allege circumstances that give the appearance of bias, regardless of whether any actual bias exists. Moreover, on appeal, the Third Circuit stated that the "June 25, 2003 letter to AUSA Daniel and

---

[9](...continued)
participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; (4) the movant cannot demonstrate good cause for delay in filing the motion. *See United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995). Defendant's motion would fail this test for the same reasons cited above.

Marino's statements at chambers conference the next day, permits an inference that the government communicated with the District Court on June 25, 2003 . . . ." *Brown*, 595 F.3d at 520.  In light of this finding, and the applicable standard, the court believes that prudence and an abundance of caution warrant recusal. Therefore, the court will recuse itself from considering Defendant's motion to vacate his conviction under 28 U.S.C. § 2255, the only matter currently pending in this case. While the court recognizes its countervailing obligation to remain assigned to a case where the arguments for recusal are insufficient, the court does not believe that recusal at this point will prejudice the parties, or that the judge to which the § 2255 motion is assigned will be burdened in deciding the relatively narrow issues related to ineffective assistance of counsel.

**IV.      Conclusion**

For the reasons set forth herein, the court will grant Defendant's motion. An appropriate order will issue.

>                   s/Sylvia H. Rambo
>                   United States District Judge

Dated:  May 4, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIM. NO. 1:02-CR-146-02** |
| : | |
| **v.** : | |
| : | **(Judge Sylvia H. Rambo)** |
| **FRANKLIN C. BROWN** : | |

## **O R D E R**

In accordance with the accompanying memorandum of law, it is **HEREBY ORDERED** that Defendant's Motion to Disqualify United States District Judge Sylvia H. Rambo Pursuant to 28 U.S.C. §§ 455 and 144 (Doc. 986) is **GRANTED**. The clerk of court shall reassign this case to another judge.

                                                                 s/Sylvia H. Rambo
                                                                  United States District Judge

Dated: May 4, 2012.