**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:02-CR-146 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| FRANKLIN C. BROWN, | : | |
| | : | |
| Petitioner. | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is petitioner

Franklin C. Brown's ("Brown") motion to vacate, set aside, or correct convictions

and sentence (Doc. 983) pursuant to 28 U.S.C. § 2255,[1] on the basis of alleged

ineffective assistance of counsel, government interference with the right to counsel,

and a due process violation under Brady v. Maryland, 373 U.S. 83 (1963), regarding

suppression of favorable evidence.  For the reasons to be discussed, the court will

deny the motion.

## I.      Statement of Facts & Procedural History

Franklin C. Brown was the Chief Legal Counsel and Vice Chairman of the

Board of Directors of the Rite Aid Corporation ("Rite Aid").  (Doc. 1003 at 1).  On

June 21, 2002, Brown was indicted for conspiracy, false statements, and obstruction

of justice arising out of accounting irregularities at Rite Aid.  (Doc. 983 at 1).  Brown

engaged a team of attorneys from Steptoe Johnson, LLP in Washington, D.C., who

---

[1]  See 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a [district]
court . . . claiming . . . that the sentence was imposed in violation of the Constitution
or laws of the United States . . . may move the court which imposed the sentence to
vacate, set aside or correct the sentence.").

represented him through trial as well as a post-trial motion for acquittal and a new trial. (Id.) Steptoe Johnson, LLP was assisted by local counsel, Joseph U. Metz of Dilworth Paxton, LLP, in Harrisburg, Pennsylvania ("Local Counsel" and collectively with Steptoe Johnson, LLP, "Trial Counsel"). (Id.)

On July 24, 2002, the government provided Trial Counsel with (1) audio tapes of six recorded conversations between Brown and Timothy Noonan, Rite Aid's former President ("Noonan recordings"), (2) transcripts for each conversation, except March 30, 2001 ("March 30 recording") due to its "poor audio quality," and (3) a composite video tape of FBI surveillance of four of the conversations. (Id. at 1-2). A week later, the government sent additional FBI surveillance video and a short transcript of the March 30 recording. (Id. at 2). Brown immediately recognized differences between his memory and the contents of the tapes and transcripts. (Id.) Brown asked Trial Counsel twice to challenge the authenticity of the recordings and request the original recordings, but Trial Counsel stated that a *prima facie* showing of tampering was required to compel production of the original recordings. (Id. at 2-3). Trial Counsel filed a motion to suppress the Noonan recordings on other grounds on September 4, 2002, but did not challenge the authenticity of the recordings or request a hearing under United States v. Starks, 515 F.2d 112 (3d Cir. 1975). (Doc. 983 at 3). The court denied the motion to suppress on December 20, 2002. (Id.) In August 2003, Brown retained forensic expert Stuart Allen to examine the audio tapes, and Allen advised Brown that the results were inconclusive because he only examined copies of the recordings. (Id. at 4). Brown asked Trial

Counsel again to obtain the original recordings and, on September 20, 2003, Local Counsel asked Assistant U.S. Attorney Kim Daniel ("Daniel") to examine the original tapes, which Daniel refused to allow three days before jury selection. (Id. at 4-5).

At trial, Trial Counsel renewed the objection to the admissibility of the Noonan recordings. (Id. at 5). Trial Counsel informed the court that Brown also had "nagging concerns about the technical aspects of the tapes." (Doc. 904 at 15). Trial Counsel requested that the tapes be "provisionally admitted" subject to Brown's right to object if an expert examination substantiated grounds for objection. (Doc. 983 at 5). In its case, the government called seventeen witnesses, including seven witnesses who admitted to conspiring with Brown or helping Brown commit criminal acts. (Doc. 1003 at 2-3). The government also presented a composite video synchronized to matching audio from the Noonan recordings with a rolling transcript to the jury. (Doc. 983 at 5). The recordings were admitted into evidence upon Trial Counsel's reservation of the right to object. (Id. at 5-6). Trial Counsel asked for a trial continuance to have Tom Owen, a forensic audio specialist, examine three of the original recordings that the government agreed to provide. (Id. at 6; Doc. 750 at 2). Before the conclusion of trial, Owen concluded that the recordings were originals and that the segments placed in evidence were authentic. (Doc. 983 at 6). Owen questioned the recording procedures and

certain "anomalies."  (Id.)  As a result of Owen's forensic review, Trial Counsel did not lodge a formal objection to the admissibility of the Noonan recordings.  (Doc. 750 at 2).

On October 17, 2003, Brown was convicted on the following ten counts: (1) conspiracy in violation of 18 U.S.C. § 371 (Counts 1 and 33); (2) false statements in violation of 18 U.S.C. § 1001 (Counts 10 and 12-15); (3) obstruction of grand jury proceedings in violation of 18 U.S.C. § 1503 (Count 34); (4) obstruction of a SEC investigation in violation of 18 U.S.C. § 1505 (Count 35); and (5) witness tampering in violation of 18 U.S.C. § 1512(b)(1)(2) (Count 36).  (Doc. 983 at 6; Doc. 1003 at 2).

Prior to trial, in January 2003, Rite Aid stopped paying Brown's legal fees.  (Doc. 983 at 3).  Brown alleges that the Department of Justice "persuaded Rite Aid to cease the advancement of attorneys' fees" based upon the DOJ guidance known as the Thompson Memorandum.[2]  (Id. at 45).  Brown contends that this termination of fee payments caused counsel to curtail trial preparations, thereby depriving him of counsel free from governmental interference in violation of the Sixth Amendment and denying him substantive due process in violation of the Fifth Amendment.  (Id. at 3, 44-45).

---

[2] The Thompson Memorandum provides guidance to prosecutors who are deciding whether to charge a business organization.  (Doc. 983 at 3).  Most pertinent to the instant matter, it counsels the prosecutor to consider whether the business entity is paying its officers' legal fees merely to protect those most culpable.  (Id.)  Brown contends that Rite Aid's decision was not only informed by the Thompson Memorandum, but also was rewarded by the government, which announced that it would not pursue any charges against Rite Aid in April 2006.  (Id. at 3-4 n.6)

Brown filed several post-trial motions for a new trial. On February 4, 2004,

Trial Counsel filed the initial motion for acquittal and a new trial citing a litany of

reasons, including that the court gave an erroneous jury instruction on aiding and

abetting. (Id. at 7). The court acknowledged that the jury instruction was plain

error, but denied the motion for lack of prejudice because the findings on the

verdict form were sufficient to conclude that the jury independently relied on a

theory of liability under United States v. Pinkerton, 328 U.S. 640 (1946). (Doc. 983 at

7). Brown did not appeal the court's decision. In January 2004, Brown engaged

new counsel, Peter Goldberger, Ellen Brotman, and John Carroll ("Appellate

Counsel"), and Appellate Counsel filed a motion seeking discovery to support

another motion for new trial on the basis that the Noonan recordings used at trial

were not authentic. (Id. at 7-8). The court denied the motion, and, on October 14,

2004, Brown was sentenced to imprisonment for ten years, two years of supervised

release, and fines and special assessments totaling $21,000. (Id. at 8).

On May 31, 2005, Brown filed a motion pursuant to Federal Rule of Criminal

Procedure 33 for a new trial on the basis of newly discovered evidence or, in the

alternative, an order to produce the original audio tapes, video tapes, and relevant

recorders. (Id. at 9). The court denied the motion because the government agreed

to provide three original audio and video tapes and the recorders, and the basis for

the Rule 33 motion was not yet established. (Id. at 10-11; Doc. 847). Upon

examination of the tapes, Brown renewed his Rule 33 motion in September 2006,

alleging that the government intentionally withheld exculpatory material and

misrepresented the authenticity of tapes, particularly the March 30 recording. (Doc. 983 at 11). The court held an evidentiary hearing and denied Brown's motion because the government did not submit false evidence or perjured testimony during trial, and Trial Counsel was aware of procedures to challenge the authenticity of the tapes before trial and did not make any objections. (Id. at 11-13). On appeal, the Third Circuit affirmed Brown's convictions and remanded the case for resentencing on other grounds. (Id. at 13; Doc. 917-2). After resentencing and another vacated judgment by the Third Circuit, Brown was resentenced to time served and one year of supervised release on August 30, 2011. (Doc. 983 at 13-14).

On November 29, 2011, Brown timely filed the instant motion to vacate, set aside, or correct convictions and sentence (Doc. 983) pursuant to 28 U.S.C. § 2255 on the basis of alleged ineffective assistance of counsel, violation of the right to counsel and substantive due process as a result of unjustified government interference, and violation of due process under Brady v. Maryland for suppression of favorable evidence. Pursuant to the court's order granting Brown's motion to disqualify Judge Rambo under 28 U.S.C. §§ 455 and 144 (Doc. 997), the Clerk of Court reassigned this case to the undersigned on May 4, 2012. These issues are fully briefed and ripe for disposition.

## II.    **Discussion**

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the

appropriate vehicle by which a defendant in custody[3] under sentence of a federal

court may challenge the legality of a conviction or sentence in the district court

where he or she was convicted and sentenced.  See 28 U.S.C. § 2255; In re

Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997).  In considering a motion to vacate, the

court must accept the truth of the defendant's factual allegations unless they are

clearly frivolous based on the existing record.  Gov't of V.I. v. Forte, 865 F.2d 59, 62

(3d Cir. 1989).  Where the record affirmatively indicates that defendant's § 2255

claim is without merit, the claim may be decided on the record without a hearing.

See 28 U.S.C. § 2255(b); Gov't of V.I. v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

If the record conclusively contradicts the facts asserted in support of a § 2255

motion, or if the defendant would not be entitled to relief as a matter of law even if

the facts as alleged are true, the reviewing court does not commit an abuse of

---

[3] To satisfy the custody requirement, a defendant must either be in prison, or his or her liberty must be under some other form of restraint as part of a federal sentence, including probation or supervised release.  See Jones v. Cunningham, 371 U.S. 236, 242 (1963).  A defendant need only satisfy the custody requirement at the time he or she files a §2255 motion, and release from custody during the pendency of a §2255 motion does not moot the motion or divest a court of jurisdiction to hear the case.  See United States v. Essig, 10 F.3d 968, 970 n.3 (3d Cir. 1993); Torzala v. United States, 545 F.3d 517, 521 (7th Cir. 2008) (stating that, as long as petitioner was in custody when he filed the § 2255 motion, he or she satisfies the custody requirement because the court considers future collateral consequences from criminal convictions).

discretion by declining to conduct an evidentiary hearing.  See Nicholas, 759 F.2d at 1075.

Brown asserts three main constitutional grounds for vacating his convictions: (1) alleged ineffectiveness of counsel in violation of the Sixth Amendment, (2) alleged government interference with the right to counsel and denial of substantive due process in violation of the Fifth and Sixth Amendments, and (3) alleged government suppression of evidence favorable to Brown in violation of Brady and the right to due process.  The court will address these claims *seriatim*.

### A.     Ineffective Assistance of Counsel

Brown argues that his conviction must be vacated because he was denied effective assistance of counsel in violation of the Sixth Amendment.  Brown alleges ineffective assistance of counsel on the following grounds: (1) Trial Counsel failed to object to the court's erroneous jury instruction on aiding and abetting; (2) Appellate Counsel failed to raise the erroneous jury instruction on appeal; (3) Trial Counsel failed to state the proper basis for a literal truth jury instruction; (4) Trial Counsel failed to investigate the authenticity and challenge the use and admissibility of the Noonan recordings; and (5) Trial Counsel failed to investigate witnesses or offer expert testimony.

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In Strickland, the Supreme Court articulated a two-prong test for determining when a defendant has been denied the effective assistance of counsel.  The defendant must show (1) that

his or her attorney's performance was deficient because it "fell below an objective standard of reasonableness" under prevailing professional norms, and (2) that such deficiency caused him or her prejudice, meaning that there was a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Id. at 687-88, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. More specifically, the defendant must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

In determining deficient performance, there is a strong presumption that counsel's conduct fell within the wide range of professional assistance and the defendant must overcome that presumption to prevail. Strickland, 466 U.S. at 689. Courts are also generally required to be "highly deferential" to the reasonable strategic decisions of counsel and must guard against the temptation to engage in hindsight review. See id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable.")

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or

prejudice prong, and the court is not required to considered the second prong of the test if the defendant is unable to satisfy the first one.  <u>Strickland</u>, 466 U.S. at 697.

> i.  *Trial counsel's failure to object to erroneous aiding and abetting jury instruction*

Brown's first claim of ineffective assistance of counsel arises from Trial Counsel's failure to object to an erroneous jury instruction on aiding and abetting. To determine deficient performance, the standard by which counsel is to be judged is that of a reasonably competent attorney.  <u>Id.</u> at 687.  It is well-settled that a reasonably competent attorney is required to know the state of the applicable law. <u>Everett v. Beard</u>, 290 F.3d 500, 510, 514 (3d Cir. 2002), *abrogated on other grounds as recognized in* <u>Priester v. Vaughn</u>, 382 F.3d 394, 397-98 (3d Cir. 2004) (holding that a reasonably competent lawyer would have carefully reviewed the jury instructions to make sure that the instructions comported with a relevant binding Supreme Court decision).

In this case, the court's jury instruction on aiding and abetting incorrectly stated that the jury could only acquit Brown for aiding and abetting if none of the three elements of aiding and abetting was proven beyond a reasonable doubt.  (<u>See</u> Doc. 675 at 32-33).  Although Trial Counsel objected to the inclusion of any aiding and abetting jury instruction, they did not object to the error in the final instruction given to the jury.  Notably, Trial Counsel did not direct the trial judge's attention to <u>United States v. Gordon</u>, 290 F.3d 539 (3d Cir. 2002), which was not only binding precedent, but also addressed the same error in an aiding and abetting jury

10

instruction.  Id. at 544-45 (concluding that instruction was erroneous because it suggested that defendant could only be acquitted if none of the elements of the crime were established and thereby allowed the jury to convict even if an element of the offense was missing).  The court finds that Trial Counsel's performance was deficient because a reasonable attorney would have been familiar with controlling case law, carefully scrutinized the jury instruction, and timely objected to the erroneous instruction.

To find ineffective assistance of counsel, it is also necessary for the defendant to demonstrate prejudice.  If Trial Counsel had timely objected to the jury instruction on aiding and abetting, there is no doubt that the court would have corrected the jury instruction.  However, the court must still assess the likelihood of a different outcome if not for counsel's failure to object.  See Thomas, 428 F.3d at 502.  In other words, the court must ascertain whether or not there was a reasonable probability the jury would have still convicted Brown.

The prejudice analysis set forth in Strickland requires the court to evaluate the effect of counsel's inadequate performance in light of the totality of evidence at trial; a verdict only weakly supported by the record is more likely to have been affected by errors in counsel's performance than one with overwhelming record support.  Strickland, 466 U.S. at 695-96; United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).  While the prejudice test is not a stringent one, the likelihood of a different result must be substantial and not simply conceivable.  Harrington v. Richter, 131 S. Ct. 770, 792 (2011) (finding no prejudice because expert evidence

only established the possibility of a different result and there was sufficient

evidence supporting the result).

In his § 2255 motion, Brown does not make any showing regarding the

likelihood of a different outcome at trial. The record, on the other hand, provides

overwhelming evidence against Brown. The government presented five of the six

Noonan recordings capturing conversations between Brown and Timothy Noonan,

former Rite Aid President, in which Brown clearly demonstrated his role in the

conspiracy. (Doc. 1003 at 3). The government also called seventeen witnesses,

including seven witnesses who admitted to conspiracy with Brown and helping

Brown commit other crimes. (Id. at 2-3). The most potent admissions came from

co-defendants, Eric Sorkin and Frank Bergonzi, as well as Timothy Noonan. (Id. at

3). The record strongly supports the convictions and does not suggest a reasonable

probability of a different result.

Moreover, the jury was instructed on alternative theories of liability. In

addition to aiding and abetting, the court instructed the jury to consider liability

under Pinkerton v. United States, 328 U.S. 640 (1946). In Pinkerton, the Court held

that a defendant may be held liable for the criminal act of a co-conspirator

committed during a conspiracy where the co-conspirator (1) committed criminal

acts "in furtherance of the conspiracy," (2) the act falls "within the scope" of the

conspiracy, and (3) the act was "reasonably foreseen as a necessary or natural

consequence" of the conspiracy. Pinkerton, 328 U.S. at 647-48. The court

instructed the jury that if it did not find Brown guilty for the criminal act under

Pinkerton, it could not hold Brown liable unless the government proved beyond a reasonable doubt that Brown personally committed or aided and abetted the commission of the criminal act. (See Doc. 1011 at 16). As the court previously explained in its decision on the motion for acquittal and for a new trial, the jury found Brown guilty on both counts for conspiracy and further made specific findings about which overt acts were committed in furtherance of the conspiracy. (Doc. 675 at 45; see Doc. 615). The verdict form thus clearly demonstrates the jury's decision to convict Brown under Pinkerton liability.[4] In light of the totality of evidence at trial, the court concludes there is not a sufficient probability that the

---

[4] Brown asserts that the jury's responses to special interrogatories cannot be used to determine whether Pinkerton liability was an independent basis for conviction because special interrogatory answers cannot be used to "clarify an ambiguous verdict." (Doc. 1011 at 4-9); see United States v. Barrett, 870 F.2d 953, 955 (3d Cir. 1989) (holding that the general verdict was ambiguous as to whether defendant was guilty on the charged offense or the lesser-included offense and the special interrogatories could not be used to replace the jury's deliberative role). However, Barrett is distinguishable from the case at bar. Here, there is simply no ambiguity to be resolved. The jury was instructed to answer the special interrogatories in the appendix only in the event the jury found Brown guilty beyond a reasonable doubt of either or both counts of conspiracy. (Doc. 1011 at 5). The special interrogatories clearly instructed the jury to identify which objectives Brown knowingly entered into the conspiracy to accomplish (which is relevant to the scope of the conspiracy and forseeability of the actions) and which overt acts were committed in furtherance of the conspiracy. (See Doc. 615; Doc. 1011 at 7-9). By completing the special interrogatories, the jury plainly determined that Pinkerton liability was an independent basis for conviction.

outcome would have been different to undermine confidence in the convictions.[5]

Instead of alleging prejudice at trial, Brown argues that Trial Counsel's failure to object to the erroneous jury instruction caused him prejudice in his post-trial motion for acquittal and for a new trial. As a result of Trial Counsel's failure to object, the court applied the plain error standard, and shifted the burden to Brown to show that the erroneous jury instruction actually affected the jury's verdict. (Doc. 675 at 34-35); see United States v. Olano, 507 US 725, 734-35 (1993). If Trial

---

[5] Brown raises a number of irrelevant arguments in an attempt to use the claim of ineffective assistance of counsel as a means of relitigating the motion for acquittal and for a new trial. First, Brown seeks to collaterally attack the court's prior decision by urging the court to use the more lenient "harmless error" standard articulated in California v. Roy, 519 U.S. 2 (1996). (Doc. 1011 at 1-3). Moreover, for the first time in over ten years, Brown claims that the erroneous jury instruction on aiding and abetting as an alternative theory to Pinkerton liability requires reversal of the convictions because the erroneous instruction *could* have been the basis for the convictions. (Doc. 1011 at 6-7); see Yates v. United States, 354 U.S. 298 (1957). Brown also alleges that the erroneous aiding and abetting instruction not only affected Counts 10 and 12 through 15 in which aiding and abetting was charged, but that it also constructively amended the indictment for Counts 1, 33, and 34 through 36 and caused "prejudicial spillover" as to all counts. (Doc. 1011 at 14-20); see United States v. McKee, 506 F.3d 225, 229 (2007); United States v. Wright, 665 F.3d 560, 575 (3d Cir. 2012). The court will not reassess its prior decision.

Brown did not raise issues of invalid alternate theories, constructive amendment, or prejudicial spillover at trial or on appeal, and a collateral challenge may not act as a substitute for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982). Nevertheless, Brown may obtain collateral relief by showing both cause for the procedural default and actual prejudice. Frady, 456 at 167-68. The defendant must demonstrate cause with evidence of an objective factor external to the defense that prevented compliance, and counsel's failure to recognize a legal basis for the claim is not sufficient. Murray v. Carrier, 477 U.S. 478, 486, 488 (1956). Brown has not demonstrated any reason for failing to raise these legal arguments in any post-trial motion or on appeal. Additionally, Brown raised the claims for the first time in his reply brief. See *infra* note 10. For all of these reasons, the court declines to consider Brown's arguments as identified herein.

Counsel had objected, the court would have used the harmless error test, and the government would have had the burden to demonstrate "beyond a reasonable doubt that the error complained of did not contribute to verdict obtained." Chapman v. California, 386 US 18, 24 (1967); United States v. Turcks, 41 F.3d 893, 898 (3d Cir. 1994). Thus, Brown asserts that, but for the shift in burden, there was a reasonable likelihood that the court's decision on the motion for a new trial would have been different because the government would not have been able to meet its burden. In reviewing the record, the court finds that the general verdict form did not ask for specific findings on any theory of liability. (Doc. 615). Despite the court's previous conclusion that there was independent Pinkerton liability, the court agrees that the government likely could not demonstrate beyond a reasonable doubt under the harmless error standard that the jury did not also rely on the improper aiding and abetting jury instruction. Nevertheless, even if Brown was successful in his motion for a new trial, the court reiterates its conclusion above that Brown cannot demonstrate that there was a reasonable probability that the outcome at trial would have been any different. Accordingly, the court finds that Brown has not established prejudice sufficient to sustain a claim of ineffective assistance of counsel.

  ii. *Appellate Counsel's failure to raise erroneous aiding and abetting jury instruction on direct appeal*

Brown's second claim of ineffective assistance is that Appellate Counsel failed to raise on appeal the court's finding that the erroneous aiding and abetting

15

jury instruction did not prejudice Brown. Certain litigation decisions are considered "fundamental" and are solely with the client's discretion to make. Jones v. Barnes, 463 U.S. 745, 751 (1983). These decisions include whether to plead guilty, waive a jury, testify on his or her own behalf, and take an appeal. See id. (noting that an "accused has the ultimate authority" to decide whether to "take an appeal"). After consultation with the client, other decisions related to the strategy at trial or on appeal fall within the professional responsibility of counsel. See Gov't of V.I. v. Weatherwax, 77 F.3d 1425, 1433-34 (3d Cir. 1996).

Notably, in this case, Brown did not take an appeal from the court's order denying the motion for acquittal and for a new trial, and there is no precedent to support a finding of ineffective assistance of counsel on the basis of the mere failure to take an appeal. To claim ineffective assistance of counsel in such cases, the defendant must make a showing that he or she wished to appeal and his or her counsel either refused or failed to take the proper steps to appeal. See, e.g., Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994) (finding that when a defendant requests counsel to take an appeal and counsel fails to do so, there is *per se* ineffective assistance of counsel); United States v. Williamson, 1:CR-07-146-01, 2009 WL 2410937, at *1 (M.D. Pa. Aug. 4, 2009) (finding no deficient performance because counsel memorialized in a letter that defendant had elected not to appeal and was told to inform counsel if he changed his mind within the appropriate time period for an appeal); Simmons v. Beyer, 689 F. Supp. 432, 444-45 (D.N.J. 1988) (collecting cases). Brown does not make any showing that he requested Appellate

Counsel to take an appeal, or that his counsel failed or refused to do so. Therefore, Brown cannot demonstrate that Appellate Counsel's performance was so deficient as to deny him effective assistance of counsel.

        iii.    *Trial Counsel's failure to support the basis for literal truth jury instruction*

Brown further claims that if his attorney had properly explained the basis for the literal truth jury instruction, Brown likely would have received the correct jury instruction and been acquitted on Count 14 of the indictment. In Rite Aid's February 9, 1999 filing with the SEC, the company's Form 8-K stated that the "review concluded that Martin Grass has no previously undisclosed business relationships with the company." (Doc. 983 at 33). This statement gave rise to Count 14 of the indictment, which charged Brown with making a false statement to the SEC because of a related-party transaction involving Grass that was not previously disclosed. (Id.) Brown contends that Trial Counsel should have argued that the Form 8-K statement is literally true because the Board of Directors' review in fact concluded that Grass had no previously undisclosed business relationships. (Id.) The court then would have instructed the jury that it is a complete defense to the charge of making false statements to the federal government if the statement is true when made. (Id.)

As the court previously noted, there is a strong presumption that a counsel's conduct was not deficient and fell within the wide range of reasonable assistance. Strickland, 466 U.S. at 689. When faced with ineffective assistance claims that

certain arguments should have been made at trial or on appeal, the court is highly deferential and presumes counsel's actions might have been sound strategy.  Id.  A defendant may overcome the presumption by showing that strategy did not motivate the counsel's actions where the record discloses such strategy; otherwise, the presumption may only be rebutted if the defendant demonstrates that no sound strategy supported counsel's actions.  Thomas, 428 F.3d at 499-500.

Moreover, counsel's informed strategy after complete investigation  is "virtually unchallengeable."  Strickland, 466 U.S. at 690.  There is a presumption that counsel's attention to certain issues over others reflects trial tactics rather than sheer neglect.  See Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  The court will not fault counsel for a "reasonable miscalculation or lack of foresight."  See Harrington, 131 S. Ct. at 791; Marshall v. Hendricks, 307 F.3d 36, 86 (3d Cir. 2002) (holding that the existence of preferable or more effective alternative strategies does not constitute ineffective assistance of counsel);  Parmelee v. Piazza, 622 F. Supp. 2d 212, 227 (M.D. Pa. 2008) (stating that the court will not make post-hoc determinations that a different trial strategy may have yielded a better result).

In this case, the record clearly indicates that Trial Counsel engaged in an informed strategy to demonstrate that the Form 8-K statement was literally true at the time it was made in order to obtain the literal truth jury instruction.  To this end, Trial Counsel chose to pursue the explanation that the related-party transaction had already been unwound, instead of the alternative explanation that the Board of Directors' review actually concluded that Martin Grass had no

18

previously undisclosed business relationships with the company. (Doc. 983 at 33; Doc. 1003 at 17-18). Brown has not overcome the trial strategy presumption, and he has not demonstrated that Trial Counsel's strategy was unsound. The court will not question counsel's informed trial tactics simply for failure to raise another possible or preferable explanation. The court concludes that Trial Counsel's strategic decision regarding the literal truth jury instruction was not deficient performance and did not constitute ineffective assistance of counsel.

> iv. *Trial Counsel's failure to investigate authenticity and object to the use and admissibility of the Noonan recordings*

Brown also alleges that Trial Counsel failed to investigate the Noonan recordings before trial and object to their use and admissibility at trial, thereby denying him effective assistance of counsel. To support his claim of deficient performance, Brown focuses on the findings of his experts made long after trial to assert that Trial Counsel should have raised the issues of authenticity and chain of custody of the tape recordings prior to and during trial. The court must review counsel's decisions based upon the totality of the circumstances and "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 688-89. As previously discussed, the court presumes counsel's conduct was reasonable assistance and counsel's strategic decisions after a full investigation are "virtually

unchallengeable." Id. at 690-91. It is also well-established that counsel cannot be ineffective for failing to raise a meritless claim. Id. at 691.

Considering circumstances at the time of trial, Trial Counsel properly investigated the authenticity of the Noonan recordings.[6] Although Brown alleges that Trial Counsel did not pursue the issue as soon as he expressed his concerns, the record indicates that Brown took three tapes to an audio forensic expert in August 2002, who advised him not to pursue inquiry into the authenticity of the recordings. (Doc. 904 at 13). Nevertheless, during trial in October 2003, Trial Counsel requested, and the court granted, a trial continuance to have an expert examine some of the original recordings to determine whether the tapes were authentic or contained anomalies. (Doc. 750 at 1). Trial Counsel retained Tom Owen, a forensic audio specialist to examine and copy three original recordings, and Owen concluded that the recordings were originals and that the segments containing pertinent conversations were authentic. (Id. at 2). Trial Counsel also requested and received the FBI chain of custody envelopes as early as April 2003. (Doc. 904 at 13).

---

[6] Pursuant to Rule 6 of the Federal Rules Governing § 2255 Proceedings, Brown filed a motion for discovery seeking depositions and production of documents regarding Trial Counsel's failure to investigate the Noonan recordings in advance of trial. (Doc. 1013). The court concludes that the motion and record are more than sufficient for the court to determine whether Trial Counsel's performance constitutes ineffective assistance. Therefore, the motion for discovery is denied as moot.

The record further shows that Trial Counsel clearly took steps to preserve Brown's ability to object to the authenticity of the Noonan recordings during trial. (See id. at 15-18.) Specifically, Trial Counsel informed the court about "nagging concerns about the technical aspects of the tapes" and noted that Trial Counsel would lodge a concrete objection if Owen could substantiate technical concerns. (Id. at 15). Only after Owen's conclusions left no basis to challenge authenticity, Trial Counsel stated that "we agree that [the tapes] are accurate representations." (Id. at 17-18). As a result of Trial Counsel's investigation and rather unavoidable decision not to object at trial, the court cannot consider Trial Counsel deficient for failure to raise a meritless claim.

> v.    *Trial Counsel's failure to interview witnesses or offer expert testimony*

Brown also alleges that Trial Counsel's failure to investigate fact witnesses or to offer expert testimony at trial violated his right to effective assistance of counsel. Under Strickland, strategic choices made after limited investigation may be entirely appropriate to the extent that reasonable decisions support limitations on investigation. Strickland, 466 U.S. at 690-91. As a threshold matter, the court must assess whether counsel's limited investigation of a matter or his or her decision that investigation of a matter was unnecessary is a strategic decision. Id. at 691. In making this assessment, the court must factor all of the circumstances, including defendant's own statements, and apply a heavy measure of deference to counsel's judgments. Id. at 690-91.

Trial Counsel is not bound by an inflexible obligation to interview every

possible witness. <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 113 (3d Cir. 1990); <u>United

States v. Cockrell</u>, 720 F.2d 1423, 1428 (5th Cir. 1983) (stating that failure to

investigate a witness who has been identified as crucial may be unreasonable, but

the failure to investigate everyone whose name is mentioned by the defendant does

not constitute ineffective assistance of counsel).  Moreover, the decision regarding

which witnesses to call is an inherently strategic decision which is left to the control

of counsel.  <u>United States v. Franklin</u>, 213 F. Supp. 2d 478, 486-87 (E.D. Pa. 2002)

(holding that counsel's decision regarding which witnesses to call is deficient only if

counsel demonstrates a "lack of preparation, ineptitude, unfamiliarity with basic

legal principles" or decides without any communication with the defendant).

Brown attempts to buttress his claim of deficient performance by relying on

inapposite cases in which counsel received names of potential witnesses from the

defendant and failed to interview them.  (Doc. 983 at 37); <u>see, e.g.</u>, <u>Gray</u>, 878 F.2d at

711.  These cases simply recognize the unassailable proposition that the failure to

conduct any pretrial investigation cannot be treated as a strategic decision.  <u>United

States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997); <u>Gray</u>, 878 F.2d at 711 (stating

that complete failure to investigate cannot be a strategic choice against pursuing

investigation when counsel has not obtained the facts to make such a decision).  It

is quite clear from the extensive trial record that Trial Counsel did not completely

fail to investigate the case.  To the contrary, Trial Counsel was amply prepared at

trial and consistently and zealously defended Brown while attempting to cast doubt

on the credibility of the government witnesses. Brown has failed to adduce any record evidence tending to show that Trial Counsel made decisions regarding which witnesses to call without communicating with Brown. At the same time, the court notes that the record before us does not reflect, nor would we expect it to reflect, Trial Counsel's investigation of each and every one of the twenty witnesses that Brown claims should have been interviewed and called to testify at trial.[7]

Assuming, as we must, that Trial Counsel's purportedly limited investigation constitutes deficient performance, Strickland next requires the court to critically assess the government's case because, as noted above, a verdict only weakly supported by the record is more likely to demonstrate prejudice than one with strong record support. Strickland, 466 U.S. at 696. The court must also consider the overall impact or effect of any of the additional witnesses' testimony, which must create a more substantial likelihood of a different result, and not merely some conceivable effect on the outcome. Harrington, 131 S. Ct. at 792. For example, counsel's failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented at trial would not support a claim of ineffective assistance. See Snow v. Sirmons, 474 F.3d 693, 729 (10th Cir. 2007); United States v. Schaflander, 743 F.2d 714, 718 (9th Cir. 1984).

---

[7] Brown's Rule 6 motion for discovery also seeks depositions and production of documents regarding Trial Counsel's failure to identify and call witnesses as part of the defense. (Doc. 1013). This is clearly fishing expedition. The court concludes that it is not necessary to gather further evidence because, as noted *infra*, Brown cannot demonstrate that Trial Counsel's decisions caused him prejudice and therefore Brown was not denied ineffective assistance of counsel.

Brown seeks the benefit of hindsight to change the results of his trial by amassing an extensive list of witnesses. Although these potential witnesses may have lent some support to a claim or raised questions about the government's witnesses, their proffered testimony is largely irrelevant and cumulative, or relates to information unavailable to the parties at the time of trial. For example, at the time of trial, Brown had only received: (1) a wholly inconclusive report from audio forensic expert Stuart Allen, and (2) a report from audio forensic expert Tom Owen, concluding that the Noonan recordings were originals and that the conversations were authentic. (Doc. 983 at 4, 6). Contrary to Brown's assertions, neither expert would have testified to facts or opinions that were likely to change the outcome of the case. Several witnesses identified by Brown would not have offered testimony or evidence directly related to the criminal charges or the potential defenses to the charges. For example, Brown claims Trial Counsel should have called Robert C. Black, Doug Broadwater, Esq., and Kevin Mann to demonstrate that certian rebate agreements and settlements were completed within FY 1999 and properly reported in its SEC filings. (Id. at 40-41). However, the issue before the court was not the timing of consummation of the agreements, but lack of proper documentation to support their booking as detailed in Frank Bergonzi's testimony.

In contrast, the record clearly supports a finding of insufficient prejudice because the government provided significant evidence against Brown. As the court previously described, the government presented five highly relevant and inculpating recordings of Brown and Timothy Noonan. (Doc. 1003 at 3). The

government also called seven witnesses, including two co-defendants and Timothy Noonan, who admitted in extensive detail to conspiracy with Brown. (<u>Id.</u> at 2-3). As a result, Brown has failed to demonstrate that it was reasonably probable that any one or combination of the potential witnesses would have affected the outcome of the case, even if each witness had some negligible impact.

### B. Government Interference with Sixth Amendment Right to Counsel

In addition to his ineffective assistance of counsel claims, Brown alleges that the government interfered with his Sixth Amendment right to counsel by persuading Rite Aid to cease paying Brown's legal fees using the Thompson Memorandum. The Sixth Amendment ensures that defendants in all criminal prosecutions shall enjoy the right to assistance of counsel in his or her defense. U.S. Const. amend. VI. The government must honor the defendant's right to counsel by allowing a defendant to obtain counsel, respecting defendant's choice of counsel, and refraining from acting in a manner that circumvents or dilutes the protection of the right to counsel. <u>Maine v. Moulton</u>, 474 U.S. 159, 170-71 (1985).

As a preliminary matter, the court must address the government's assertion that the court should dismiss the claim because Brown did not raise this issue at trial or on appeal. The Supreme Court has established that a collateral challenge may not act as a substitute for an appeal. <u>Frady</u>, 456 U.S. at 165. To obtain collateral relief for a trial error to which no contemporaneous objection was made, a defendant must show both cause excusing the procedural default and actual

prejudice resulting from the error,[8] even when the defendant alleges a fundamental

constitutional error. <u>Frady</u>, 456 U.S. at 167-68; <u>United States v. Shaid</u>, 937 F.2d 228,

233 (5th Cir. 1991).

To satisfy the cause standard, a defendant must show that an objective factor

external to the defense prevented counsel from complying with the procedural rule.

<u>Murray</u>, 477 U.S. at 488. The court must examine the defendant's conduct to

determine whether he or she possessed, or by reasonable means could have

obtained, a sufficient basis to allege the claim prior to the collateral attack.

<u>McCleskey v. Zant</u>, 499 U.S. 467, 498 (1991). To that end, a defendant may

demonstrate cause by showing that a factual or legal basis for the claim was not

reasonably available prior to the collateral attack, interference by officials made

compliance impracticable, or the defendant received ineffective assistance of

counsel. <u>Murray</u>, 477 U.S. at 488. Counsel's failure to recognize a factual or legal

basis for the claim, or failure to raise the claim despite recognizing it, does not

constitute cause for a procedural default. <u>Id.</u> at 486; <u>see</u> <u>Engle v. Isaac</u>, 456 U.S. 107,

131-32, 134 (1982) (finding that the applicable precedent was decided almost five

years prior to trial and, where the legal basis of a constitutional claim is available,

the demands of comity and finality prevent the court from considering unawareness

of the objection sufficient cause). The United States Constitution guarantees

---

[8] The "cause and actual prejudice" standard first articulated in habeas
corpus cases also applies to procedural defaults in § 2255 actions for federal
defendants. <u>See</u> <u>Frady</u>, 456 U.S. at 167.

defendants only a fair trial and a competent attorney and does not "insure that defense counsel will recognize and raise every conceivable constitutional claim." Engle, 456 U.S. at 134.

Brown contends that he satisfied the cause standard for three main reasons. First, there was no evidence that Trial Counsel or Appellate Counsel was informed of the reasons for Rite Aid's decision to stop advancing legal fees or that they were aware of the Thompson Memorandum.[9] (Doc. 1011 at 34). Second, Brown argues that his counsel would not have had sufficient time to raise the issue at trial or on appeal. (Id.) Neither of these reasons constitutes sufficient cause for the failure to raise the claim prior to this collateral motion. Indeed, the premise of Brown's argument is that the Thompson Memorandum was widely publicized and controversial when it was published in January 2003, ten months prior to trial and several years prior to Brown's numerous motions for new trial and appeal. (Id. at 33). To Brown, it is "inconceivable" that the Thompson Memorandum did not influence Rite Aid's decision to stopping paying Brown's legal fees. (Id.) In light of this widespread publication, Brown cannot be excused for failing to recognize the

---

[9] Brown's Rule 6 motion for discovery seeks, *inter alia*, documentary evidence and depositions from Rite Aid's management and Board of Directors regarding Rite Aid's decision to stop paying Brown's legal fees, and communications with the government. (Doc. 1013). Assuming *arguendo* that the Thompson Memorandum substantially influenced Rite Aid's decision, Brown may not raise claims in his § 2255 motion that were never raised at trial or on appeal unless Brown demonstrates both cause for the failure to raise the claim and actual prejudice. See Frady, 456 at 167-68. The court rejects Brown's Rule 6 motion for all of the reasons set forth herein. See *infra* pp. 25-28.

factual basis for his claim and failing to raise it prior to the instant matter.[10]  Under

the circumstances, the court finds that Brown has not cited sufficient cause for the

procedural default.

Third and finally, Brown argues that a new decision addressing

constitutional claims arising out of government interference in a corporation's

payment of employees' legal fees, United States v. Stein, 541 F.3d 130 (2d Cir. 2008),

has changed the applicable law.  (Doc. 1011 at 34-35).  A change in the law may

amount to sufficient cause only if the change is so novel that its legal basis was not

reasonably available or foreseeable at the time of trial or appeal.  Reed v. Ross, 468

US 1, 16 (1984).  Recent changes in the law do not constitute cause if other known

or discoverable evidence could have supported the claim.  McCleskey, 499 U.S. at

497-98 (stating that the failure to raise the claim will not be excused merely because

the discovery of evidence later might have supported or strengthened the claim).

Although courts did not address the precise issue regarding a corporation's

payment of its employees' legal fees prior to Stein, it is important to note that the

Second Circuit's decision is only persuasive authority for the court, and the factual

---

[10] Brown raises a new argument in his reply brief that if this claim could have
been reasonably developed at trial or on appeal, then counsel was ineffective for
failure to raise it.  (Doc. 1011 at 34).  Arguments raised for the first time in a reply
brief are generally waived.  Fairness requires that nonmovants have the
opportunity to respond to any arguments presented by the movant.  Tristate HVAC
Equipment, LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 529 n.8 (E.D. Pa.
2010); see United States v. Medeiros, 710 F. Supp. 106, 110 (M.D. Pa. 1989) ("It is
improper for a party to present a new argument in his or her reply brief.").  For this
reason, the court deems this argument waived and declines to consider it.

predicate in Stein varies significantly from the case *sub judice*. In Stein, there was considerable evidence of government interference beyond the promulgation of the Thompson Memorandum. Stein, 541 F.3d at 152. It is not, therefore, a foregone conclusion that every defendant would rely on Stein to assert a claim of government interference with the right to counsel. See Engle, 456 U.S. at 133-34 (stating that "every trial presents a myriad of possible claims" and not all counsel may rely on the same case to assert a similar claim).

Moreover, there is significant and well-established jurisprudence on government interference with a defendant's right to counsel, including interference with legal fees in forfeiture cases. See Stein, 541 F.3d at 154; see, e.g., Herring v. New York, 422 U.S. 853, 857-58 (1975) (holding that government violated Sixth Amendment right to counsel when judges under New York statute could deny defense counsel opportunity to make a closing statement); Massiah v. United States, 377 U.S. 201 (1964). Therefore, the claim that a corporation limiting payments of its employees's legal fees pursuant to government policy violates the employees' right to counsel was reasonably available or foreseeable prior to the collateral motion. See United States v. Jenkins, 333 F.3d 151, 155 (3d Cir. 2003) (holding that the argument was not novel because the foundation for the seminal case at issue was established years before the decision was announced). The court concludes that Brown has not established cause for failure to raise this claim at trial or on appeal,

even if the court presumes prejudice in instances of government interference with the right to counsel.  See Strickland, 466 U.S. at 692.  The court will summarily dismiss the claim.

### C.    Due Process Violation Regarding the March 30 Recording

Brown alleges that the government violated his Fifth Amendment right to due process because it provided only an audio tape, largely inaudible, and partial transcript of the March 30 recording.  Under Brady v. Maryland, 373 U.S. 83 (1963), the government's suppression of exculpatory or impeachment evidence material to the defendant's guilt or to punishment, irrespective of good faith or bad faith, violates due process.  Brady, 373 U.S. at 87; United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006).

The government urges the court to dismiss the claim because this issue was raised in Brown's post-trial motion for a new trial.  (Doc. 859).  In its dismissal of this motion, the trial court held, and the Third Circuit affirmed, that the complete transcript failed to contain any new evidence favorable to Brown.  (See Doc. 904 at 53-56; Doc. 917-2 at 21, 25-27, 31-32).  Once a defendant has raised a claim and it has been resolved adversely at trial and on direct appeal, it is within the court's discretion to decline to reconsider those arguments when raised again in collateral proceedings under 28 U.S.C. § 2255.  See Kaufman v. United States, 394 U.S. 217, 227 n.8 (1969); United States v. Orejuela, 639 F.2d 1055, 1057

(3d Cir. 1981); <u>see also</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 721 (1993) (stating that a prior opportunity for full and fair litigation is normally dispositive of a habeas corpus motion).

In this case, Brown claimed a <u>Brady</u> violation in his renewed Rule 33 motion for a new trial because the original tape and first generation digital copy of the March 30 recording provided after trial were more audible than previously disclosed recordings of the conversation and allegedly contained exculpatory material. (Doc. 917-2 at 19-21). The court held a four-day evidentiary hearing to hear testimony from nine witnesses, and the court accepted twenty-seven exhibits into evidence. (<u>Id.</u> at 25). The court denied Brown's renewed Rule 33 motion because it concluded that the complete transcripts from the more audible March 30 recording did not contain exculpatory or impeachment information, and that the government had not committed a <u>Brady</u> violation. (<u>Id.</u>; Doc. 904 at 53-56). The Third Circuit agreed that the new transcript was "at best, neutral as to Brown's guilt or innocence and not exculpatory." (Doc. 917-2 at 31). In light of Brown's prior opportunity for a full and fair hearing and appeal, the court declines to reconsider Brown's claim of a <u>Brady</u> violation on collateral review.

Brown further argues that, in the Rule 33 motion proceedings, Appellate Counsel failed to point out specific material parts of the complete transcript that were favorable to Brown. Culled to its essence, Brown seeks to transform his due

process claim into one for ineffective assistance of counsel.[11]  As presented, Brown

cannot satisfy the deficient performance prong of the <u>Strickland</u> test because

Brown cannot rebut the presumption that counsel's representation was reasonable

assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 689, or that counsel's attention to certain

arguments over others reflects trial tactics.  <u>See</u> <u>Yarborough</u>, 540 U.S. at 8.  Brown

merely makes a conclusory statement that "post-trial counsel failed to point out

significant portions of the transcript." (Doc. 1011 at 35).  Importantly, Brown has

not demonstrated that the choice to focus on certain portions of the transcript in

the Rule 33 motion for a new trial was an improper strategy.  Therefore, the court

dismisses Brown's additional claim for ineffective assistance of counsel.

---

[11] The court may dismiss this additional claim for a number of reasons. Brown raises the allegation of ineffective assistance of counsel for the first time in his reply brief.  For reasons of fairness, <u>see</u> *supra* note 10, claims raised for the first time in the reply brief are generally waived.  Moreover, the court may dispose of a vague and conclusory allegation of ineffective assistance of counsel without further investigation.  <u>See</u> <u>Thomas</u>, 221 F.3d at 437; <u>White v. United States</u>, CRIM. 07-123-SLR, 2013 WL 1116508 (D. Del. Mar. 15, 2013) (denying as meritless defendant's allegation that counsel failed to investigate facts and case law as too vague and conclusory to satisfy either prong of the <u>Strickland</u> test).

**III.    Conclusion**

For the reasons set forth herein, the court will deny Brown's motion to

vacate, set aside, or correct convictions and sentence pursuant to 28 U.S.C. § 2255.

An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      November 25, 2013